■ In the Matter of ROSE S. MARTIN G.S., Appellant-Respondent; ELLYN J.S. et al., Respondents-Appellants. [741 NYS2d 84] —In a proceeding pursuant to Mental Hygiene Law article 81, (1) the petitioner, Martin G.S., appeals, as limited by his brief, from so much of an order and judgment (one paper) of the Supreme Court, Queens County (Kassoff, J.), dated September 28, 2000, as appointed the cross petitioners as the personal needs guardians of Rose S., and (2) the cross petitioners, Ellen J.S. and Stephanie S.W., cross-appeal, as limited by their brief, from stated portions of the same order and judgment which, among other things, determined that a health care proxy executed by Rose S. on June 22, 1999, was valid.

Ordered that the order and judgment is modified, on the law,

by deleting the provision thereof determining that the health care proxy executed by Rose S. on June 22, 1999, was valid, and substituting therefor a provision therefor declaring it invalid; as so modified, the order and judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

The Supreme Court erred in declaring that the health care proxy executed by Rose S. on June 22, 1999, was valid. For the purposes of Public Health Law § 2981, every adult is presumed competent to appoint a health care agent (*see* Public Health Law § 2981 [1] [b]). In light of the presumption of competency, the burden of proving mental incompetence is upon the party asserting it (*see Smith v Comas,* 173 AD2d 535; *Feiden v Feiden,* 151 AD2d 889; *Matter of Obermeier,* 150 AD2d 863, 864). However, where there is medical evidence of mental illness or a mental defect, the burden shifts to the opposing party to prove by clear and convincing evidence that the person executing the document in question possessed the requisite mental capacity (*see Hubbard v Gatz,* 130 AD2d 622, 623; *see also Matter of Shapiro*, NYLJ, Apr. 19, 2001, at 25, col 1).

While it is true that persons suffering from a disease such as Alzheimer's are not presumed to be wholly incompetent (*see Matter of Waldron,* 240 AD2d 507, 508; *Feiden v Feiden, supra* at 890), the trial testimony and the hospital records of Rose S. support a finding that she was suffering from a mental illness or defect, thereby shifting the burden to the petitioner to demonstrate that Rose possessed the requisite mental capacity at the time she signed the health care proxy.

The petitioner testified that Rose suffered from dementia since 1989. She was diagnosed with dementia by a doctor at a hospital on June 23, 1999, one day after she signed the health care proxy. One of her treating physicians, Dr. Hollier, testified that she was not competent to sign a health care proxy on June 24, 1999. In addition, Rose's hospital record from her hospital stay of June 19 through June 24, 1999, indicates various instances of confusion and disorientation. Both St. John's Hospital, where she was admitted on June 19, 1999, and Mount Sinai Hospital, where she was transferred on June 24, 1999, refused to honor the health care proxy appointing the petitioner as the health care agent.

Clearly, Rose was suffering from dementia and was subject to confusion. Thus, although the court properly placed the initial burden of demonstrating incompetency upon the cross petitioners, in light of the evidence of mental defect, the court should have shifted the burden to the petitioner to demon-

strate that Rose was competent at the time she executed the health care proxy in June 1999.

The testimony fails to demonstrate that Rose was competent at the time she signed the health care proxy. In fact, the petitioner is the only witness who testified that Rose was competent at the time she executed the health care proxy, and despite his testimony to that effect, he also testified that his reason for having Rose execute a health care proxy was because the hospital told him that she was incompetent. Further, there is no evidence that either of the witnesses to the health care proxy attempted to determine whether Rose was competent prior to witnessing the health care proxy. Although the petitioner testified that he explained to Rose what the proxy was for, he failed to establish that he inquired as to her competence. Thus, because the petitioner failed to demonstrate, by clear and convincing evidence, that Rose was competent at the time she executed the health care proxy, the court erred in upholding its validity.

The parties' remaining contentions are without merit. Smith, J.P., Goldstein, McGinity and H. Miller, JJ., concur.